EXHIBIT 26

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS; et al., | |
| *Plaintiffs,* | No. 1:25-cv-_____ |
| v. | |
| ROBERT F. KENNEDY, JR., et al., | |
| *Defendants.* | |

## DECLARATION OF BETHANY D. JENKINS

I, Bethany D. Jenkins, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct:

1.      I am the Vice President for Research and Economic Development and Professor of Cell and Molecular Biology at the University of Rhode Island. I have personal knowledge of the facts set forth in this declaration, and if required to testify, would and could competently do so.

2.      I submit this Declaration in support of the States' Motion for Temporary Restraining Order.

**Professional Background**

3.      I am the Vice President for Research and Economic Development and Professor of Cell and Molecular Biology at University of Rhode Island. As the Vice President for Research and Economic Development I help our community receive competitive federal awards that augment significant investments made by the State of Rhode Island in URI as our State's flagship land and sea grant university.

4.      University of Rhode Island's mission is one as a student-centered research institution, that actively partners with other organizations globally and locally to advance knowledge and to develop

1

informed residents and leaders. URI is committed to high-quality education, community engagement, and solving the world's most important challenges. Situated on the traditional land and territories of the Narragansett Nation and the Niantic People, URI strives to create a diverse and inclusive environment for researchers, teachers, learners, and community members.

5.      University of Rhode Island has three campuses throughout the state of Rhode Island, that serve approximately 14,000 undergraduate students and approximately 3,000 graduate students.

6.      I am providing this declaration to document the impacts of NIH grant terminations on the University of Rhode Island.

**Reliance on NIH Funding**

7.      In fiscal year 2024, University of Rhode Island received funding through the National Institutes of Health ("NIH") to support over 90 projects, totaling $22.1 M.

8.       University of Rhode Island receives NIH grants across a variety of institutes encompassed within the NIH, including the National Center for Complementary and Integrative Health, , the National Institute on Aging, the National Institute on Alcohol Abuse and Alcoholism, The National Institute of Allergy and Infectious Disease, National Institute of Arthritis & Musculoskeletal & Skin Diseases, the National Institute of Biomedical Imaging and Bioengineering, the National Institute of Dental and Craniofacial Research, the National Institute of Diabetes and Digestive and Kidney Diseases, the National Institute of Environmental Health Sciences, the National Institute of General Medical Sciences, the National Institute National Institute of Neurological Disorders and Stroke, the National Institute of Nursing Research, the Office of the Director, and the Office of Research Infrastructure Programs.

9.      The work done by University of Rhode Island on NIH funded projects provides education and training in Agriculture, Biology, Biomedical Engineering, Chemistry, Chemical Engineering, Civil Engineering, Computational Biology, Computer Sciences, Electrical Engineering, Health Sciences, Kinesiology, Mathematics, Mechanical Engineering, Public Health, Neuroscience, Nutrition, Nursing, Pharmaceutical Sciences, Physics, Psychology, Sociology, and other programs.

2

10.     University of Rhode Island provides considerable employment benefits in the Science, Technology, Engineering and Mathematics ("STEM") workforce to the Rhode Island economy.

**Typical Timeline and Processes for NIH Grant Awards**

11.     The Division of Research and Economic Development at University of Rhode Island works with researchers to submit grant applications and tracks grant applications and awards.

12.     Based on my work as Vice President for Research and Economic Development, I have an understanding of the NIH grant process based on my 2 years in the role and 19 years as Principal Investigator managing federal awards.

**Terminations of NIH Grants**

13.     Since March 21, the University of Rhode Island has had two NIH grants terminated.

14.     The terminations received as of April 1 are attached hereto as Exhibits A and B.

15.     These terminations will result in the loss of $3.7 million in research money to University of Rhode Island.

16.     The termination notices for these grants have provided very little to explain the termination, instead noting that the research no longer "effectuates agency priorities. Research programs based primarily on artificial and non-scientific categories, including amorphous equity objectives, are antithetical to the scientific inquiry, do nothing to expand our knowledge of living systems, provide low returns on investment, and ultimately do not enhance health, lengthen life, or reduce illness. Worse, so-called diversity, equity, and inclusion ("DEI") studies are often used to support unlawful discrimination on the basis of race and other protected characteristics, which harms the health of Americans. Therefore, it is the policy of NIH not to prioritize such research programs." In my 2 years as the Vice President for Research at University of Rhode Island, I have not seen this language previously used to cancel grants.

17.     The termination notices have also stated that there is no corrective action that can be taken to ensure the grant aligns with agency priorities. However, prior to receipt of the termination, University of Rhode Island had not been given notice of any opportunity to submit any "corrected" grant

materials to align with agency priorities.  Nor was University of Rhode Island provided with any updated "agency priorities" with which its research must align.

18.    On March 20, NIH terminated Project Number 1R01 DA058994-01A1, Network-based study design, statistical, and modeling solutions for HIV among populations that use illicit substances: informing interventions and policy in real-world settings using existing data had been "hereby terminated pursuant to the Fiscal Year 2024 National Institutes of Health ("NIH") Grants Policy Statement, and 2 C.F.R. § 200.340(a)(2). The terminated project is a transdisciplinary collaboration led by the University of Rhode Island with performance sites at Boston University, The New York University School of Medicine, the University of Chicago and Brown University. The terminated research is innovative and essential to advance HIV research by contributing to the investigation of causal mechanisms among networks of populations at high risk for HIV infection compounded by illicit substance use, specifically men at risk for HIV.

19.    On March 21, NIH terminated ESTEEMED Scholars Program at the University of Rhode Island Project Number 5R25EB034489-02. The URI ESTEEMED program provides students from underrepresented backgrounds with the skills and resources necessary to pursue advanced education and degree programs in bioengineering and related disciplines. The goals of URI ESTEEMED program are (1) to develop a cohort of scholars who embody critical thinking, engineering design, and fundamental research skills that enable them to develop an early scientific inquiry and research mindset, and (2) to support the development of Scholars' STEM identity and self-efficacy through self-exploration, faculty and near-peer mentoring, academic and professional development advising, academic support and preparation, and positive research experiences. The impact on student achievement and the inclusive environment at URI will be hit particularly hard. Without URI ESTEEMED, several of our current trainees would have had to drop out of URI due to the lack of academic support the program provided and the stipend that allowed them to focus on their academics and research instead of working an outside job. The loss of URI ESTEEMED means that we will not have the resources to cultivate a community of diverse scholars on the same level and devalues the importance of the work the trainees have achieved

thus far. Furthermore, faculty mentors who volunteer their time and resources to mentor our trainees will not have the opportunity to work with such a diverse group of students under the support of the URI ESTEEMED program.

**Comparisons Across Administrations**

20.    In prior years, terminations were exceedingly rare and followed due process. The current approach is without precedent in our experience.

**Impact on Institutional Operations**

21.    Each loss of support for grant funded staff and students is a significant impact on URI's budget. URI is in the process of trying to determine how and to what extent it can continue to support students, staff and faculty time that were supported by federal funds that were terminated

22.    Use of internal funds to replace federally funded salaries prevents the use of these funds for any other purpose, including other planned improvements to our programs and research.

**Conclusion**

23.    NIH grant terminations with no explanation or remedy are undermining confidence in the system.  These harms are ongoing and, in many instances, irreparable.

_____

Bethany Diane Jenkins

Date:  4/1/2025

# EXHIBIT A

 

**National Institutes of Health**
*Office of Extramural Research*

March 20, 2025

Bethany Jenkins
■University of Rhode Island

Dear Bethany Jenkins:

Effective with the date of this letter, funding for Project Number 1R01 DA058994-01A1 is hereby terminated pursuant to the Fiscal Year 2024 National Institutes of Health ("NIH") Grants Policy Statement,[1] and 2 C.F.R. § 200.340(a)(2). This letter constitutes a notice of termination.[2]

The 2024 Policy Statement applies to your project because NIH approved your grant on September 15, 2024, and "obligations generally should be determined by reference to the law in effect when the grants were made."[3]

The 2024 Policy Statement "includes the terms and conditions of NIH grants and cooperative agreements and is incorporated by reference in all NIH grant and cooperative agreement awards.[4]" According to the Policy Statement, "NIH may ... terminate the grant in whole or in part as outlined in 2 CFR Part 200.340.[5]" At the time your grant was issued, 2 C.F.R. § 200.340(a)(2) permitted termination "[b]y the Federal awarding agency or pass-through entity, to the greatest extent authorized by law, if an award no longer effectuates the program goals or agency priorities."

This award no longer effectuates agency priorities. Research programs based primarily on artificial and non-scientific categories, including amorphous equity objectives, are antithetical to the scientific inquiry, do nothing to expand our knowledge of living systems, provide low returns on investment, and ultimately do not enhance health, lengthen life, or reduce illness. Worse, so-called diversity, equity, and inclusion ("DEI") studies are often used to support unlawful discrimination on the basis of race and other protected characteristics, which harms the health of Americans. Therefore, it is the policy of NIH not to prioritize such research programs.

---

[1] https://grants.nih.gov/grants/policy/nihgps/nihgps.pdf.

[2] 2 C.F.R. § 200.341(a); 45 C.F.R. § 75.373

[3] *Bennett v. New Jersey*, 470 U.S. 632, 638 (1985).

[4] 2024 Policy Statement at IIA-1.

[5] *Id.* at IIA-155.

1

Although "NIH generally will suspend (rather than immediately terminate) a grant and allow the recipient an opportunity to take appropriate corrective action before NIH makes a termination decision,"[6] no corrective action is possible here. The premise of this award is incompatible with agency priorities, and no modification of the project could align the project with agency priorities.

Costs resulting from financial obligations incurred after termination are not allowable.[7] Nothing in this notice excuses either NIH or you from complying with the closeout obligations imposed by 2 C.F.R. §§ 75.381-75.390. NIH will provide any information required by the Federal Funding Accountability and Transparency Act or the Office of Management and Budget's regulations to *USAspending.gov.*[8]

**Administrative Appeal**

You may object and provide information and documentation challenging this termination.[9] NIH has established a first-level grant appeal procedure that must be exhausted before you may file an appeal with the Departmental Appeals Board.[10]

You must submit a request for such review to Dr. Matt Memoli no later than 30 days after the written notification of the determination is received, except that if you show good cause why an extension of time should be granted, Dr. Memoli may grant an extension of time.[11]

The request for review must include a copy of the adverse determination, must identify the issue(s) in dispute, and must contain a full statement of your position with respect to such issue(s) and the pertinent facts and reasons in support of your position. In addition to the required written statement, you shall provide copies of any documents supporting your claim.[12]

Sincerely,

**Michelle G.
Bulls -S**

Digitally signed by
Michelle G. Bulls -S
Date: 2025.03.20 10:11:04
-04'00'

Michelle G. Bulls, on behalf of Pamela Fleming, Chief Grants Management Officer, National Institute on Drug Abuse
Director, Office of Policy for Extramural Research Administration
Office of Extramural Research

---

[6] 2024 Policy Statement at IIA-156.
[7] *See* 2 C.F.R. § 200.343 (2024).
[8] 2 C.F.R. § 200.341(c); 45 C.F.R. § 75.373(c)
[9] *See* 45 C.F.R. § 75.374.
[10] See 42 C.F.R. Part 50, Subpart D
[11] 11 *Id.* § 50.406(a)
[12] 12 *Id.* § 50.406(b)

# EXHIBIT B

---------- Forwarded message ---------
From: **Jean** ██████  ████████
Date: Fri, Mar 21, 2025 at 12:33 PM
Subject: Fwd: Grant Termination Notification
To: Kate Barber <k████████████

Hi Kate,

Sorry for this news.

This letter is in regards to Samantha ████████ project P11444 and P13130.

Kind regards,

Jean

---------- Forwarded message ---------
From: **Bulls, Michelle G. (NIH/OD) [E]** <████████████v>
Date: Fri, Mar 21, 2025 at 12:29 PM
Subject: Grant Termination Notification
To: ██████████████████>



3/21/2025

Jean ██████████

University Of Rhode Island

██████████

Dear Jean ███████████:

Effective with the date of this letter, funding for Project Number 5R25EB034489-02 is hereby terminated pursuant to the Fiscal Year 2024 National Institutes of Health ("NIH") Grants Policy Statement,[1] and 2 C.F.R. § 200.340(a)(2). This letter constitutes a notice of termination. [2]

The 2024 Policy Statement applies to your project because NIH approved your grant on 5/1/2024, and "obligations generally should be determined by reference to the law in effect when the grants were made."[3]

The 2024 Policy Statement "includes the terms and conditions of NIH grants and cooperative agreements and is incorporated by reference in all NIH grant and cooperative agreement awards.[4]" According to the Policy Statement, "NIH may … terminate the grant in whole or in part as outlined in 2 CFR Part 200.340.[5]" At the time your grant was issued, 2 C.F.R. § 200.340(a)(2) permitted termination "[b]y the Federal awarding agency or pass-through entity, to the greatest extent authorized by law, if an award no longer effectuates the program goals or agency priorities."

This award no longer effectuates agency priorities. Research programs based primarily on artificial and non-scientific categories, including amorphous equity objectives, are antithetical to the scientific inquiry, do nothing to expand our knowledge of living systems, provide low returns on investment, and ultimately do not enhance health, lengthen life, or reduce illness. Worse, so-called diversity, equity, and inclusion ("DEI") studies are often used to support unlawful discrimination on the basis of race and other protected characteristics, which harms the health of Americans. Therefore, it is the policy of NIH not to prioritize such research programs.

Although "NIH generally will suspend (rather than immediately terminate) a grant and allow the recipient an opportunity to take appropriate corrective action before NIH makes a termination decision,"[6] no corrective action is possible here. The premise of this award is incompatible with agency priorities, and no modification of the project could align the project with agency priorities.

Costs resulting from financial obligations incurred after termination are not allowable.[7] Nothing in this notice excuses either NIH or you from complying with the closeout obligations imposed by 2 C.F.R. §§ 75.381-75.390. NIH will provide any information required by the Federal Funding Accountability and Transparency Act or the Office of Management and Budget's regulations to *USAspending.gov.[8]*

**Administrative Appeal**

You may object and provide information and documentation challenging this termination.[9] NIH has established a first-level grant appeal procedure that must be exhausted before you may file an appeal with the Departmental Appeals Board.[10]

You must submit a request for such review to Dr. Matt Memoli no later than 30 days after the written notification of the determination is received, except that if you show good cause why an extension of time should be granted, Dr. Memoli may grant an extension of time.[11]

The request for review must include a copy of the adverse determination, must identify the issue(s) in dispute, and must contain a full statement of your position with respect to such issue(s) and the pertinent facts and reasons in support of your position. In addition to the required written statement, you shall provide copies of any documents supporting your claim.[12]


Sincerely,

Michelle G. Bulls -S    Digitally signed by Michelle G. Bulls -S

Michelle G. Bulls, on behalf of Mutema Nyankale, Chief Grants Management Officer, NIBIB

Director, Office of Policy for Extramural Research Administration

Office of Extramural Research

---

[1] https://grants.nih.gov/grants/policy/nihgps/nihgps.pdf.

[2] 2 C.F.R. § 200.341(a); 45 C.F.R. § 75.373

[3] *Bennett v. New Jersey*, 470 U.S. 632, 638 (1985).

[4] NIH Grants Policy Statement at IIA-1.

[5] *Id.* at IIA-155.

[6] NIH Grants Policy Statement at IIA-156.

[7] *See* 2 C.F.R. § 200.343 (2024).

[8] 2 C.F.R. § 200.341(c); 45 C.F.R. § 75.373(c)

[9] *See* 45 C.F.R. § 75.374.

[10] See 42 C.F.R. Part 50, Subpart D

[11] 11 *Id.* § 50.406(a)

[12] 12 *Id.* § 50.406(b)

--
*Jean L* ▮▮▮▮▮▮