1                    UNITED STATES DISTRICT COURT

2                    DISTRICT OF MASSACHUSETTS (Boston)

3                                    No. 1:25-cv-10814-WGY

4

COMMONWEALTH OF MASSACHUSETTS, et al,
5              Plaintiffs
vs.
6

ROBERT F. KENNEDY, JR., et al,
7              Defendants

8

                                   No. 1:25-cv-10787-WGY
9

AMERICAN PUBLIC HEALTH ASSOCIATION, et al,
10             Plaintiffs
vs.
11

NATIONAL INSTITUTES OF HEALTH, et al,
12             Defendants

13

                        * * * * * * * *
14

                   For Zoom Hearing Before:
15                  Judge William G. Young

16

                        Final Pretrial
17

18                 United States District Court
                   District of Massachusetts (Boston.)
19                 One Courthouse Way
                   Boston, Massachusetts 02210
20                 Thursday, June 12, 2025

21

                        * * * * * * *
22

23            REPORTER: RICHARD H. ROMANOW, RPR
                   Official Court Reporter
24             United States District Court
      One Courthouse Way, Room 5510, Boston, MA 02210
25                 rhr3tubas@aol.com

```
 1              A P P E A R A N C E S

 2

 3   GERARD J. CEDRONE, ESQ.
     KATHERINE B. DIRKS, ESQ.
 4   PHOEBE LOCKHART, ESQ.
        Massachusetts Attorney General's Office
 5      One Ashburton Place, 20th Floor
        Boston, MA 02108
 6      (617) 963-2282
        E-mail: Gerard.cedrone@mass.gov
 7      For the Commonwealth of Massachusetts plaintiffs
    and
 8   OLGA AKSELROD, ESQ.
     JESSIE J. ROSSMAN, ESQ.
 9      American Civil Liberties Union Foundation
        125 Broad Street
10      New York, NY 10004
        (212) 549-2659
11      Email: Oakselrod@aclu.org
        For the APHA plaintiffs

12

13   THOMAS PORTS, JR., ESQ.
        DOJ-Enrd
14      P.O. Box 875
        Ben Franklin Station
15      Washington, DC 20044
        (202) 307-1105
16      Email: Thomas.ports@usdoj.gov
    and
17   ANUJ K. KHETARPAL, ESQ.
        United States Attorney's Office
18      1 Courthouse Way, Suite 9200
        Boston, MA 02210
19      (617) 823-6325
        Email: Anuj.khetarpal@usdoj.gov
20      For all defendants

21

22

23

24

25
```

P R O C E E D I N G S

(Begins, 11:00 a.m.)

THE CLERK:  The Court will hear Civil Action Numbers 25-10787, the American Public Health Association, et al versus the National Institutes of Health, et al, and 25-10814, the Commonwealth of Massachusetts, et al versus Robert F. Kennedy, Jr., et al.

THE COURT:  Good morning.  This is a hearing held at your request on our zoom platform.  This is the final pretrial conference in this case held pursuant to Federal Rule of Civil Procedure 16.

This hearing is open to the public.  If any member of the public is present, I remind you you must keep your microphone muted and that the rules of court remain in full force and effect.  Specifically, that is to say there is no taping, streaming, rebroadcast, screen shots, or other transcription of these proceedings.

These proceedings are taken down by our Official Court Reporter, Rick Romanow.  I have law clerks on the line.

Because there are a number of attorneys, I think the intelligent way to proceed is, um, when I call upon plaintiffs or intervenors or defendants, um -- well they're not intervenors, the second case, it will be

clear, if you wouldn't, um, take the moment to introduce

yourself as a speaker representing the group that you

represent, that way the Court Reporter may have a

complete record.

I say to counsel, and in gratitude, that you've

anticipated this hearing in large measure and I don't

think it ought take too long.  Here's what I'm looking

to have established.

I want to be clear on what the record is upon

which decision will be made.  I want to be clear as to

the procedure that we will follow on Monday.  And then,

off the record, what we'll do is close this hearing down

and, um, invite only counsel back for a private hearing,

I want to raise the possibility of settlement.

So let me start, because you have informed me, um,

with my statement as to what I think the record is.  And

there's an issue here and the problem is a problem of

the Court, but I think I can talk my way through it, and

I will ask.

So I understand that the record is the, um,

following.  The record is certainly the administrative

record as it has been provided by the various

defendants.  The plaintiffs have provided various

materials beyond that record.  The defense has

appropriately and timely objected and filed a memorandum

1    on that point.  Here's where I'm embarrassed.  We can't

2    read it because we're having trouble with our CMECF.

3          But from the tenor of our discussions, I rather

4    imagine what it says, and while I'm not going to launch

5    into some oral argument about it, let me proceed, um,

6    thinking I know what the defense has to say about it and

7    how I propose to treat it.  You don't have to agree to

8    this, but, um, how I propose to treat it.

9          So I assume now that the record is the, um --

10   includes the record provided by the defendant, what they

11   say is the administrative record in an administrative

12   procedure case.  I think everyone agrees on that.  The

13   plaintiffs want to put additional materials before me.

14   I propose to treat those materials as evidentiary

15   materials, that is to say, I recognize that the defense

16   does not agree that I should consider them at all,

17   that's in essence a relevance objection, relevance in

18   the sense of legal materiality in an administrative

19   procedure case.  I honor that, honor it in the sense

20   that I recognize that, and when it comes to the written

21   opinion, I'm going to have to say something about that.

22         In addition to that, I imagine the defense says

23   that even if I were to look at these things, again they

24   are not persuasive, and I recognize that.  And I, um,

25   will allow, in the argument, argument as to why they're

```
 1   not persuasive in a legally-relevant sense or not
 2   persuasive factually even without any particular
 3   affidavits or counteraffidavits, the defense just
 4   disagrees, and that's fine.
 5        Where I need to give the defense the chance -- and
 6   I haven't read the -- I haven't read the opposition,
 7   you'll recognize, but where I need to give the defense
 8   the chance, if they say things like "That's not true" or
 9   "The matter is -- that's just not authentic, that didn't
10   happen," um, well I need to give the defense, and the
11   plaintiff, a chance to figure out what we're going to --
12   how we're going to address that.  I don't -- I was going
13   down the line that I would be able to have extensive
14   oral argument on Monday and, um, I am already working
15   with the record I have.
16        So let me stop, the first round, on the record and
17   talk plaintiffs in the first case, have I got this right
18   on the record, do you agree with this way of proceeding?
19        MR. CEDRONE:  Good morning, your Honor, Gerard
20   Cedrone from the Massachusetts Attorney General's Office
21   on behalf of the States in the '814 case.  I think we
22   essentially agree, and let me just say a few things to
23   make sure I factor all the nuances.
24        So for Monday, I think that the plaintiff states
25   generally agree that the question of the merits of these
```

first-phase issues, so were the challenged directives lawful, um, and were the terminations lawful?  That can proceed on the administrative record.  I think with the caveat that we produced a demonstrative spreadsheet in May, granted it had been terminated, the defendants responded with issues as to some of them, we're working through them and our client to produce a revised spreadsheet tomorrow.  But I think by and large we agree that on the merits, um, the Court is in a position to decide, on the administrative record, whether the directives are lawful, whether the terminations are lawful, and whether the, um, types of vacatur and rather, APA remedies, are appropriate in this case.

The only --

THE COURT:  Go ahead.

MR. CEDRONE:  That then leaves the question of the exhibits, which at least in the plaintiffs states case mainly goes to the availability of injunctive relief.  I think there may be some minor issues that those declarations are relevant to, but the main issue any declarations go to is the propriety of injunctive relief and specifically irreparable harm.

On that issue we, um, we don't take the defendants so far to have disputed, as your Honor put it, whether something is true or not or the authenticity of

1  something or not, we take the defendants to be disputing

2  whether we meet the legal standard for irreparability or

3  whether an injunction is even available in an APA case,

4  which is why we propose, and we understand the

5  defendants don't have to accept this, but we propose a

6  case-stated procedure for that question of irreparable

7  harm.  Essentially we put forward our declarations, we

8  don't understand the defendants to dispute the --

9      THE COURT:  Well let me stop you and, um --

10      (Court Reporter Zoom Freeze.)

11      (Off the record.)

12      (Back on the record, 11:45 a.m.)

13      THE COURT:  We're back in the public forum.  I've

14  made whatever statements I need to make.  We were

15  hearing Ms. Akselrod and I interrupted her.

16      So, Ms. Akselrod, what I had to say is of no

17  moment, but I did interrupt you.  And why don't you pick

18  up.

19      MS. AKSELROD:  Thank you, your Honor.  So just a

20  couple of points.

21      The first question was, um, the position of the

22  APHA claims with regard to how to deal with the extra-

23  record evidence, and we are in agreement with, um, with

24  your Honor's, um, description of how to proceed with

25  regard to that.

1    THE COURT:  Fine.

2    MS. AKSELROD:  There is a separate question, um,

3    of the motion to complete, that was what the filing

4    was -- the defendants' filing this motion this morning,

5    excuse me, and we are prepared to discuss that, um,

6    motion now, if your Honor is ready for that.

7    THE COURT:  Um, I am not ready for it.  That's not

8    what I planned to deal with.  I'll deal with that on the

9    papers, once I've reviewed the papers, and I will enter

10   an order thereon, promptly.

11   So now let me turn to Mr. Ports, and introduce

12   yourself, Mr. Ports, I take it you're the one who's

13   going to speak.  You understand my question, the record

14   I have before me and how I am going to treat it.  What

15   is the public officials' position?

16   MR. PORTS:  Yes, your Honor, and thank you, and

17   good morning, Tom Ports from the U.S. Department of

18   Justice.

19   So before -- in order to answer the question, I

20   believe we need to back up a little bit and talk about

21   what we understand is -- well there's a couple of

22   things.  And first there's the matter of the record and

23   the Court's review should be on the record.  So we agree

24   with that.  We agree that the record is complete and

25   that we have submitted it.

1    THE COURT:  Well there appears -- and Ms. Akselrod

2    raised something and I cut her off, because honestly I'm

3    not ready and I'm going to review the filings with

4    respect to it.  But, um, I suppose I have to, um, deal

5    with this motion to complete the record, one way or

6    another, and I will.  But once I've done that, then I

7    hear you say, um, though your rights may need to be

8    reserved, the record, as far as administrative record,

9    will be before the Court for a decision.  Right?

10   MR. PORTS:  Correct, your Honor.  Assuming the

11   Court denies the motion to complete, then the record

12   will be complete on Monday.

13   Additionally the defendants have been ordered to

14   file the record for the APHA case by Monday.  We expect

15   and intend to file that tomorrow, so that the Court and

16   the plaintiffs have it, so that the records in both

17   cases, for all of the Phase 1 claims, are complete and

18   prepared at that time.  So that's our intent with regard

19   to the record.

20   THE COURT:  Thank you.

21   MR. PORTS:  Now we -- as far as extra-record

22   evidence, there's been no motion -- although there's a

23   motion to complete the record, there is no motion to

24   supplement the record.  So plaintiffs have not contended

25   that --

1    THE COURT:  What about these affidavits to which

2    they make reference?

3    MR. PORTS:  Yes, your Honor, so I've got two

4    points on those affidavits.  Those affidavits, our

5    position is they should not in any case be considered

6    for a ruling on the merits of whether this -- these

7    alleged agency actions were arbitrary and capricious or

8    otherwise.  However, there are some facts that

9    plaintiffs -- that would not necessarily fall under that

10   rule that plaintiffs would need to prove.

11       In particular, if they want to -- if they intend

12   to introduce any evidence to prove that they had

13   standing to challenge the withdrawal of a notice of

14   funding opportunity, now the fact that they want to say

15   that, you know, "We think we have standing because we

16   applied for this," that would be evidence that they

17   would need to introduce, but is not included in the

18   record, and is not part of whether the decision was

19   reasoned, so it is somewhat separate from that rule.

20       Additionally, if plaintiffs intend, as they said

21   they do, to ask the Court to enter a permanent

22   injunction, they need to prove that they're entitled to

23   that relief, which requires them to prove that they have

24   suffered harm that is not within the administrative

25   record, that is extra.

1     On that, as Mr. Cedrone said in his filings,

2  defendants are not, um -- we do not agree to have the

3  Court accept and consider affidavits without the

4  opportunity to cross-examine the declarants.  These are

5  many many affidavits that follow --

6     THE COURT:  No, I understand.  I understand.  I

7  understand what you say.  So, um -- and more than

8  understand it, I accept it.  What you're saying is "We

9  want the right of first examination.  We want, um,

10  because" -- in any event, I don't see a permanent

11  injunction here.  Here's the -- here's the worst that

12  can happen to the government, the public officials, it

13  seems to me, that I enter a declaration that these --

14  for whatever reason, these directives are, um, are void

15  and have no effect, and therefore they, um, because it

16  would have to be based on harm to the defendants, these

17  grants already, um, either available for obligation and

18  funded by the Congress, have to be funded, have to be

19  the monies allocated in this fiscal year to be paid and

20  have to be paid now promptly.  Again I'm not saying I'm

21  going there, but that's the worst that can happen to the

22  government officials in terms of substance.

23     Now that's not a permanent injunction, that just

24  says how monies already appropriated by the Congress

25  will be disposed of rather than letting the fiscal year

1   run out and have them revert to the general fund.

2        Now you say before I ever get there, even if I

3   rule that the administrative action is arbitrary and

4   capricious, you want the opportunity to cross-examine

5   witnesses on the harm to the grant recipients.

6        Do I understand?

7        MR. PORTS:  Respectfully, no, your Honor, it is

8   only with respect to -- we don't understand that

9   plaintiffs are offering witnesses for that purpose with

10  regard to arbitrary and capricious --

11       THE COURT:  No, no, I didn't -- feel free to tell

12  me I don't understand, but I think I understand that.  I

13  can decide arbitrary and capricious on the record as

14  we -- the administrative record as I ultimately order it

15  to be, but to enter an injunction which says, "Now go

16  ahead and pay out the funds that Congress has

17  appropriated, and more than that, pay them to these

18  grant recipients in the manner that you have during this

19  fiscal year," you say you want to hear evidence?

20       MR. PORTS:  Yes, your Honor, it is our position

21  and understanding that to enter a permanent injunction,

22  the Court would need to find evidence of irreparable

23  harm.

24       THE COURT:  I think you're right.  And I -- and I

25  think that's so.  I just don't see it's a -- permanent

injunctions are -- I think of "permanent" in terms of

time.  I mean I suppose, if -- and I don't really see

this to be argued, and I'm not pressing to go there, but

if I thought this stuff was discriminatory, especially

racially discriminatory, um, I -- the law is very clear

on that, the Constitution's very clear on that.  So I

could enter some injunction without limited time as to

that, as to these plaintiffs anyway.  But, um, as to

these grants, they -- they only deal with funds that

Congress has appropriated in this fiscal year, that's

the urgency.  But focusing on that, not whether I call

the injunction "permanent" or not, you want to see

evidence of harm, right?

MR. PORTS:  Respectfully, your Honor, we don't

believe that a permanent injunction is appropriate, we

believe that --

THE COURT:  Please.  Please.  This is Rule 16.  I

know you don't.

MR. PORTS:  Right, your Honor.

THE COURT:  You talked about wanting to cross-

examine.  I love cross-examination.  You know that's

fine.  Maybe they will.  In fact my instincts are that

they probably should put on evidence of that.

Now -- but you're not -- when I ask you, that's

what you want?  It's a softball question.  Don't I

1  understand what you're saying, don't you want to hear

2  from these witnesses?

3      MR. PORTS:  Yes, your Honor.  If the Court

4  believes that it may rely on their testimonies, and

5  plaintiffs want to present it, yes, then we want the

6  opportunity to cross-examine those witnesses.

7      THE COURT:  You want to say, and you're telling

8  me, that, um -- because you say it's your right, I,

9  absent that opportunity, I, um, cannot consider

10  affidavits addressed to that issue.  Right?

11      MR. PORTS:  Yes, your Honor, correct.

12      THE COURT:  All right, I follow that.  I follow

13  that.  And, um, that is a matter.  Let me go back to

14  Mr. Cedrone.

15      What about that?  I mean it seems to me that

16  you're going to have to prove it.  We don't usually do

17  cases on, um -- well I can see that in two steps.

18  There's no need to get there unless I rule on the

19  administrative record that the conduct was arbitrary and

20  capricious.  So, um, how do you -- but it does seem to

21  me that you don't get any injunction, though it's

22  crucial that an injunction enter promptly, if you were

23  to win that first point.

24      When are you going to put on that evidence?

25      MR. CEDRONE:  So let me take each of those points

in turn, first the arbitrary and capricious and the
record.  I think we -- if I'm understanding correctly,
are all circling the same point, which is that the
administrative record allows the Court to decide
arbitrary and capricious, and also to enter APA remedies
like vacatur, like setting aside final agency actions,
which courts do all the time based on the record.

THE COURT:  I agree.

MR. CEDRONE:  So we can get that form of final
relief.

On the question of injunctive relief, which we are
seeking a permanent injunction with respect to
constitutional claims and other issues, I think I agree
there too that there are issues that can be resolved
before wading into any factual disputes, like the
defendants' legal objections to the availability of
injunctive relief, or other legal issues they raised in
the briefing, and that we think will be fully briefed by
Monday.

As to how to present this evidence and when?  I
think we are very flexible and able to move quickly,
consistent with our desire for prompt relief.  We
hadn't, um, you know candidly until just this past week,
understood there to be a dispute on the facts.  But we
are flexible and open to conferring with the government

1    to come up with a procedure that makes sense.

2         I think one complication is, the defendants, the

3    federal government has taken the position in their

4    opposition to preliminary injunctive relief, that there

5    needs to be proof as to every plaintiff and maybe even

6    every university for states, you know like California,

7    to have -- the University of California and California

8    State University.

9         So we -- you know we are flexible, we think it

10   makes sense to work out with the other side some way to

11   do this on a representative basis or a -- you know we

12   don't have really preconceived --

13        THE COURT:  Thank you, Mr. Cedrone.

14        Ms. Akselrod, in essence you agree with that,

15   right?

16        MS. AKSELROD:  Yes, your Honor.  We'd be prepared

17   to put on witnesses with regard to the those issues,

18   outside the lawfulness of the directives, at a later

19   date that we can work out after we confer.

20        THE COURT:  Fine.  Fine.  Fine.

21        MS. AKSELROD:  If I may, your Honor?  Just one

22   clarification, however, which is that, um, the defense

23   has raised, um, non-merit issues, not only with regard

24   to harm and relief, but also with regard to standing.

25   Our position would be that the June 16th hearing should

go forward on the AR with regard to lawfulness, and that all non-merits issues, not only harm, but also jurisdictional issues, such as standing, that they are contesting, also be resolved in that later proceeding.

THE COURT: No, you can't -- you can't resolve, um -- that puts the cart before the horse. Only people who have standing are going to be heard here. So we're going to have to resolve the issue of standing. I hadn't thought, I will tell you, that there was much dispute about that. And while I think it makes sense to go forward on Monday on the issue -- on the APA issues of, um, arbitrary and capricious action, I do think that. But, um, the Court -- it's only going to entertain that from people who have standing.

Now to the extent -- I have to say, I think that is, on the undisputed record, a legal issue, and so it seems to me I can resolve that by, um, argument and ruling -- um, maybe not on Monday, but at an appropriate time. So I'm holding that -- insofar as it's a legal issue, I'm holding that into the hearing on Monday.

MS. AKSELROD: Thank you, your Honor.

THE COURT: Now, um, so I'm actually, and I appreciate counsel, I'm informed by your several positions, and I propose that there is the second issue that I need to handle, and it's this. I propose that,

um, on Monday, um, we have oral argument.  I would propose oral argument, given that I plan to be very conversant with the administrative record, I propose that oral argument not exceed 45 minutes a side, and, um, further I propose -- and this would be my normal practice, and I -- this is how I normally do it in a, um, jury-waived case.  I recognize that, um, we will not be arguing on Monday injunctive relief, injunctive relief beyond APA remedies, which do not derive for injunctive relief.

So at the end of the argument, having heard my questions and the like, we will recess.  I will ask you, at that time, um, do you want me to stay my hand in, um, resolving this issue, so that you folks can confer and conceivably resolve the matter.  If you both did, then I would, um, then I would hold off as you jointly, um, recommend it.

If any of you did not, um, I would retreat to chambers candidly, and think, um, talk with my law clerks candidly, and see whether recognizing that this is a, um, case that originated with the claim for a preliminary injunction, whether there was anything I could say, um, that would, um, obviate the need for further hearing, things looking bad for the plaintiff, or, um, enhance the need for a further hearing on

1    injunctive relief.  I don't know.  I'm working.  I'm not

2    ready.  I'll be ready Monday.  But that was the second

3    issue I wanted to raise here.  And so following the same

4    procedure, we'll start with Mr. Cedrone, that's how I

5    normally do it in a jury-waived case.

6        What about the -- oh, one thing I didn't say is,

7    um, I always follow the Massachusetts rule that the

8    party with the burden of proof argued last, but that

9    won't work here, because that works where the judge has

10   presided over an actual trial and the judge has heard

11   all the evidence.  Here, while I say I'll be ready, and

12   I will, if you haven't heard witnesses, it depends on my

13   reading of the record.  So really you need to go first,

14   both plaintiffs need to go first and make your

15   arguments, and then we'll give Mr. Ports equal time to

16   rebut those arguments and point out things he needs to

17   point out.

18       So what do you think of those proposals, those

19   time limits, that procedure?  Mr. Cedrone.

20       MR. CEDRONE:  I think that all makes sense, both

21   the timing, the issues to be covered, and having the

22   plaintiffs go first.  This is -- Monday's proceeding

23   will be on a closed record, um, it's similar to almost

24   an appellate argument, so it makes sense for the, you

25   know, plaintiffs to --

 1      THE COURT:  It is, but, um, unlike most appellate

 2  courts on which I have heard or even been privileged to

 3  sit, I'm giving you longer to argue.  The case warrants

 4  it.

 5      THE COURT:  Mr. Ports, what do you think?

 6      MR. CEDRONE:  Can I just ask you?  Would you --

 7  would you like the plaintiffs -- for the 45 minutes,

 8  were you envisioning 45, 45, 45?

 9      THE COURT:  (Laughs.)  No.  No, I was envisioning

10  you splitting it up.

11      MR. CEDRONE:  All right.

12      THE COURT:  But you can push back on that.  It

13  just seems --

14      MR. CEDRONE:  I think we ought to --

15      THE COURT:  At a certain point, more lengthy

16  argument is less persuasive than more -- just saying

17  "Look at this, Judge, look at that," at least that's

18  been my experience.  And, um --

19      MR. CEDRONE:  We have -- I'm sorry, I didn't mean

20  to cut you off.

21      THE COURT:  No, I -- I'm both familiar with

22  argument like that, but that's not particularly helpful.

23  My duties -- whether it's argued or not, things are not

24  waived here.  My duty is to give a comprehensive, um,

25  written opinion.  And when I hold out the possibility,

1    and that's all it is, of speaking later in the day or in

2    the next few days, or some truncated order, um, that's

3    because I am sensitive to the needs for speed here.  But

4    there has to be a comprehensive written opinion here

5    and, um, that's going to take a while.  But the time is

6    ticking against you in this fiscal year, no one is more

7    sensitive to that than I.

8         Does that -- do you understand where I'm coming

9    from on this?

10        MR. CEDRONE:  I do, and there's obviously been

11   voluminous briefing and I think the most helpful thing

12   we can do Monday is answer your Honor's questions.  So I

13   think the time limits that your Honor would find useful

14   are, um, will work for us, without treading on --

15        THE COURT:  Ms. Axselrod, you agree?  Are you

16   okay?

17        MS. AKSELROD:  Your Honor, if the Court was

18   willing to provide the plaintiffs with a little more

19   time since there are --

20        THE COURT:  We'll give you an hour, but you split

21   it.

22        MS. AKSELROD:  Wonderful.  Thank you, your Honor.

23   And just one question whether --

24        THE COURT:  But an hour is not an invitation to

25   take the hour, it's that the Court will be available to

 1 | hear you for an hour.
 2 |      Go ahead.
 3 |      MS. AKSELROD:  Of course, your Honor.  And one
 4 | question?  Whether the Court will also allow rebuttal,
 5 | for the plaintiff?
 6 |      THE COURT:  No.  Nope.  No rebuttal.
 7 |      MS. AKSELROD:  Thank you.
 8 |      THE COURT:  Okay.
 9 |      Mr. Ports, how does this suit?
10 |      MS. PORTER:  One clarification, your Honor.  It
11 | was defendants' understanding of -- well it's the
12 | defendants' position that the plaintiffs need to provide
13 | -- or that all parties need to provide competent
14 | evidence, and so it was our intent to present, I guess,
15 | three things.  We're going to ask for judicial notice of
16 | something for a mootness purpose.  We may seek to
17 | similarly, um, move in an additional party opponent,
18 | which doesn't necessarily require introducing evidence.
19 | And the third thing is --
20 |      THE COURT:  I didn't understand the second?  Move
21 | in what?
22 |      MR. PORTS:  Sorry.  I didn't need to discuss the
23 | second.  Sorry.  Then just two things, your Honor, not
24 | three.  I apologize.
25 |      THE COURT:  Okay.

1    MR. PORTS:  So, Number 1, um, for mootness

2    purposes, which is mentioned in our brief, we would

3    intend to ask for judicial notice of some Federal

4    Register Notices about holding meetings.  And then the

5    second thing, as a rebuttal argument about, um, the

6    cancellation of all grants regarding certain activities,

7    we would similarly -- we intended to introduce as, um, a

8    self-authenticating business record, the fact that NIH

9    records demonstrated that certain grants continued to be

10   active.  And so we intended to move those as sort of

11   competent, self-authenticating nonhearsay evidence into

12   the record at the trial.  That was our expectation.  If

13   the Court does not want that or like us to file a --

14        THE COURT:  No, I'm fine with that.

15        MR. PORTS:  Okay, thank you.

16        THE COURT:  I'm fine with that, um, but it comes

17   out of your hour and --

18        MR. PORTS:  Understood, your Honor.

19        THE COURT:  -- I'll deal with it.  But the two

20   things that you mentioned make sense to me and I -- I

21   would like to hear them.

22        MR. PORTS:  Thank you, your Honor.

23        THE COURT:  Now then there's only one other thing

24   that I'd like to raise in this, um, final pretrial

25   conference, because we know what we're doing on Monday.

1    And at the -- and not counting against the two hours for

2    oral argument, we'll see whether it's worthwhile

3    discussing when or even if we need to present, um, live

4    evidence or representative evidence and the like?  I'm

5    perfectly amenable to that.  That will be discussed on

6    Monday.

7        There's one other thing that you're quite right,

8    you already raised it, and in fact it may be in the

9    schedule, and again I'll go around in the same order,

10    but there's a Phase 2 here.  And, um, there's this

11    schedule, I think, or you've at least mentioned, when we

12    would talk about case management for Phase 2.

13        Mr. Cedrone, is that already scheduled or, um --

14    it would be wise now, with my schedule and Ms. Belmont

15    here, to revisit that, not substantively, but just when

16    are we going to talk about that?

17        MR. CEDRONE:  I believe, your Honor, where we left

18    things is there's a schedule for the government to

19    provide, um, a record on the second phase issues and

20    then for us to litigate those.  I think it's open-ended

21    beyond that.  Perhaps it makes sense for us to review

22    where the schedule stands now, chat with Mr. Ports and

23    Mr. Khetarpal, and arrive on Monday with anything that

24    needs to be filled out now beyond what we've already

25    scheduled.

1    THE COURT:  Again that makes perfect sense to me.

2    My focus on Monday is going to be on the administrative

3    record and its implications and the Administrative

4    Procedure Act.

5         Ms. Akselrod, you agree?

6         MS. AKSELROD:  Yes, your Honor, that works for the

7    APHA plaintiffs as well, um, with regard to Phase 2.

8         THE COURT:  Thank you.

9         Mr. Ports, you have the same view?

10        MR. PORTS:  Your Honor, I do recall that there is

11   a schedule in place for Phase 2 already.  So the Court

12   has ordered that defendants will file any motion to

13   dismiss on Friday.  We then have until early July to

14   file an administrative record for Phase 2, followed by,

15   um, if plaintiffs agree that the case can proceed on the

16   record filed, there would be cross-motions for summary

17   judgment on Phase 2.  And if they do not, they will file

18   motions to complete or supplement following our filing

19   of the administrative record.  So things are already

20   scheduled.

21        THE COURT:  Thank you.  Thank you, Mr. Ports, I'm

22   assuming you read that right.  I didn't intend, in any

23   way, to alter it, that's what we had discussed and

24   agreed, I simply don't want to lose sight of it.

25        Now you people have been helpful throughout, and I

want to say that sincerely.  I'm going to go around one
more time simply asking for questions.  Recognizing that
I have the duty to promptly, um, rule on this motion to
complete the record.  But other than that, I'll be
getting ready for Monday.

Mr. Cedrone, any questions?

MR. CEDRONE:  I don't think so for the state
plaintiffs, although I'll pause if there are any counsel
of record in other states on the line who want to remind
me of something I'm forgetting.

(Silence.)

THE COURT:  Being mute, Ms. Akselrod, any
questions?

MS. AKSELROD:  Yes, your Honor, I have two
questions.

One is that, um, there has been some discussion
amongst the parties about the length of reply and how
the reply briefs should be -- should be submitted to the
Court.  Currently I believe each side has 10 pages, and
that's just something that wasn't decided.

We would be fine with expanding that.  We would be
fine with submitting 15 pages, if the defense, um,
agrees that --

THE COURT:  I'm not resolving that.  We're fine.

MS. AKSELROD:  Okay, that's fine.

1    Your Honor, the second question, um, is we have

2    not until today received notice of these exhibits that

3    the defense intends to offer on Monday and, um --

4         THE COURT:  Well I expect him to sit down with you

5    and tell you what they are.  Again, you can work that

6    out.

7         All right, Mr. Ports, any questions?

8         MR. PORTS:  Um, yes, your Honor, I have three, um,

9    three housekeeping matters.

10        First, the U.S. Attorney's Office, while we have

11   been speaking, should have printed and sent down to the

12   Clerk's Office copies of the briefing, um, since the

13   Court can't access CMCF.  The motion to complete

14   briefing should be in the Clerk's Office, a courtesy

15   copy.  That's the first matter.

16        Second, at the last hearing the Court asked the

17   parties to weigh in on whether "Grant Watch" could be

18   considered as a learned treatise?  Defendants did look

19   into that and it appears to be a crowd-sourced website

20   with unverified and apparently unverifiable sourcing and

21   --

22        THE COURT:  I didn't, you misspeak, I never called

23   it a "learned treatise."

24        MR. PORTS:  I apologize, your Honor.

25        THE COURT:  I called it under 803(17), and you can

argue that on Monday.  But it seems to be a place where

people go, of all sorts.  I understand that.  Maybe it's

-- maybe it's nothing more than Wikipedia.  But, um,

this is a complex matter.  If you think I cannot consult

it even, you're open to argue that on Monday.

What other questions?

MR. PORTS:  Thank you, your Honor.

And the last one was -- and I understand if you,

um, it's perfectly acceptable if you don't want to hear

it, but as it stands, the defendants are to file two

separate 10-page oppositions for overlapping issues.  We

wanted to offer to the Court to combine them.  But if

the Court prefers they remain separate, for page-limit

purposes, we can leave them separate.

THE COURT:  Honestly I'm not, um -- I'm reading

the materials I have.  I have complemented you for the

areas where you, um, agree.  I express sincerely my

respect for a zealous advocacy.  The Court need not

resolve matters like this.  You people can resolve these

matters.  And, um, my job is to be ready on Monday and

to resolver once substantive motion, which I will do.

Always a pleasure to see you all, even if I

haven't heard you all.  And, um, absent a phone call to

Ms. Belmont in the interim, we will start on Monday.

Even if productive discussions ensue, this Court's going

 1    ahead on Monday.  And I do thank you.

 2          We'll stand in recess.

 3          (Ends, 12:15 p.m.)

 4

 5                    C E R T I F I C A T E

 6

 7          I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do

 8    hereby certify that the forgoing transcript of the

 9    record is a true and accurate transcription of my

10    stenographic notes, before Judge William G. Young, on

11    Thursday, June 12, 2025, to the best of my skill and

12    ability.

13

14

15

16

17    /s/ Richard H. Romanow 06-13-25
      _____
18    RICHARD H. ROMANOW  Date

19

20

21

22

23

24

25