UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
AMERICAN PUBLIC HEALTH ASSOCIATION;  )
IBIS REPRODUCTIVE HEALTH;           )
INTERNATIONAL UNION, UNITED         )
AUTOMOBILE, AEROSPACE, AND          )
AGRICULTURAL IMPLEMENT              )
WORKERS (UAW); BRITTANY CHARLTON;   )
KATIE EDWARDS; PETER LURIE; and     )
NICOLE MAPHIS,                      )
                                    )
                    Plaintiffs,     )    CIVIL ACTION NO.
          v.                        )    25-10787-WGY
                                    )
NATIONAL INSTITUTES OF HEALTH;      )
JAY BHATTACHARYA, in his official   )
capacity as Director of the         )
National Institutes of Health;      )
UNITED STATES DEPARTMENT OF HEALTH  )
AND HUMAN SERVICES; and ROBERT F.   )
KENNEDY, JR., in his official       )
capacity as Secretary of the        )
United States Department of Health  )
and Human Services,                 )
                                    )
                    Defendants.     )
_____)


_____
                                    )
COMMONWEALTH OF MASSACHUSETTS;      )
STATE OF CALIFORNIA; STATE OF       )
MARYLAND; STATE OF WASHINGTON;      )
STATE OF ARIZONA; STATE OF          )
COLORADO; STATE OF DELAWARE;        )
STATE OF HAWAI'I; STATE OF          )
MINNESOTA; STATE OF NEVADA;         )
STATE OF NEW JERSEY; STATE OF       )
NEW MEXICO; STATE OF NEW YORK;      )
STATE OF OREGON; STATE OF RHODE     )
ISLAND; and STATE OF WISCONSIN,     )
                                    )
                                    )
                                    )

[1]

|  |  |  |
|---|---|---|
| Plaintiffs, | ) | CIVIL ACTION NO. |
| v. | ) | 25-10814-WGY |
|  | ) |  |
| ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; JAYANTA BHATTACHARYA, in his official capacity as Director of the National Institutes of Health; NATIONAL INSTITUTES OF HEALTH; NATIONAL CANCER INSTITUTE; NATIONAL EYE INSTITUTE; NATIONAL HEART, LUNG, AND BLOOD INSTITUTE; NATIONAL HUMAN GENOME RESEARCH INSTITUTE; NATIONAL INSTITUTE ON AGING; NATIONAL INSTITUTE ON ALCOHOL ABUSE AND ALCOHOLISM; NATIONAL INSTITUTE OF ALLERGY AND INFECTIOUS DISEASES; NATIONAL INSTITUTE OF ARTHRITIS AND MUSCULOSKELETAL AND SKIN DISEASES; NATIONAL INSTITUTE OF BIOMEDICAL IMAGING AND BIOENGINEERING; EUNICE KENNEDY SHRIVER NATIONAL INSTITUTE OF CHILD HEALTH AND HUMAN DEVELOPMENT; NATIONAL INSTITUTE ON DEAFNESS AND OTHER COMMUNICATION DISORDERS; NATIONAL INSTITUTE OF DENTAL AND CRANIOFACIAL RESEARCH; NATIONAL INSTITUTE OF DIABETES AND DIGESTIVE AND KIDNEY DISEASES; NATIONAL INSTITUTE ON DRUG ABUSE; NATIONAL INSTITUTE OF ENVIRONMENTAL HEALTH SCIENCES; NATIONAL INSTITUTE OF GENERAL MEDICAL SCIENCES; NATIONAL INSTITUTE OF MENTAL HEALTH; NATIONAL INSTITUTE ON MINORITY HEALTH AND HEALTH DISPARITIES; NATIONAL INSTITUTE OF NEUROLOGICAL DISORDERS AND STROKE; NATIONAL INSTITUTE OF NURSING RESEARCH; NATIONAL LIBRARY | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |  |

[2]

```
OF MEDICINE; NATIONAL CENTER FOR      )
ADVANCING TRANSLATIONAL SCIENCES;     )
JOHN E. FOGARTY INTERNATIONAL         )
CENTER FOR ADVANCED STUDY             )
IN THE HEALTH SCIENCES; NATIONAL      )
CENTER FOR COMPLEMENTARY AND          )
INTEGRATIVE HEALTH; and CENTER        )
FOR SCIENTIFIC REVIEW,                )
                                      )
                    Defendants.       )
_____)
```

YOUNG, D.J.                                              June 24, 2025

## ORDER

After careful consideration, the Court denies the motions for stay.

**1. This Court has subject matter jurisdiction**

The issue of this Court's subject matter jurisdiction has been fully addressed in its opinion <u>Massachusetts</u> v. <u>Kennedy</u>, No. CV 25-10814-WGY, 2025 WL 1371785, at *3 (D. Mass. May 12, 2025) and it would be superogatory to rehearse it here.

Significantly, the defendants raise no question about the full trial they have been accorded under the Administrative Procedure Act nor about either this Court's findings of fact[1]

---

[1] *You have to listen to the bastards, Austin. They might just have something.*
                                          -Hon. Franklin H. Ford
                    . . .
          Judicial fact-finding is … rigorous.
          Necessarily detailed, judicial fact-finding
          must draw logical inferences from the

[3]

---

record, and, after lucidly presenting the subsidiary facts, must apply the legal frame-work in a transparent written or oral analysis that leads to a relevant conclusion. Such fact-finding is among the most difficult of judicial tasks. It is tedious and demanding, requiring the entirety of the judge's attention, all her powers of observation, organization, and recall, and every ounce of analytic common sense he possesses. Moreover, fact-finding is the one judicial duty that may never be delegated to law clerks or court staff. Indeed, unlike legal analysis, many judges will not even discuss fact-finding with staff, lest the resulting conclusions morph into judgment by committee rather than the personal judgment of the duly constituted judicial officer.

Fair and impartial fact-finding is supremely important to the judiciary…

While trial court legal analysis is appropriately constrained by statutes and the doctrine of stare decisis, the true glory of our trial courts, state and federal, is their commitment to fair and neutral fact-finding. Properly done, facts found through jury investigation or judicial analysis truly are "like flint."

Yet there has been virtual abandonment by the federal judiciary of any sense that its fact-finding processes are exceptional, or due any special deference. Federal district court judges used to spend their time on the bench learning from lawyers in an adversarial atmosphere, and overseeing fact-finding by juries or engaging in it themselves. This was their job and they were proud of it. Today, judges learn more reflectively, reading and conferring with law clerks in chambers. Their primary challenge is the proper application of the law to the facts—facts that are either taken for granted, or sifted out of briefs and affidavits, and, in the mode of the European civil justice systems, scrutinized by judges

[4]

upon a comprehension and largely undisputed record of decision nor about this Court's rulings of law.[2]

### 2. A stay would cause irreparable harm to the plaintiffs

This is a case in equity concerning health research already bought and paid for by the Congress of the United States through funds appropriated for expenditure and properly allocated during this fiscal year. Even a day's delay further destroys the unmistakable legislative purpose from its accomplishment.

### 3. The balance of the equities strongly militates against a stay.

Again, it is worth noting that no question is here raised in the motions for stay about the scope of this Court's declarations under the APA. They are limited to the particular grants identified by the parties with standing before this Court which were arbitrarily and capriciously terminated by the defendants.[3]

---

>           and clerks behind closed doors. While judges
>           do talk to lawyers in formal hearings, these
>           hearings can be short, and usually serve to
>           test and confirm a judge's understanding
>           rather than develop it.

William G. Young, A Lament for What Was Once and Yet Can Be, 32 B.C. Int. & Comp. L. Rev. 312-314 (2009) (footnotes omitted)

[2] The full written decision will soon follow.

[3] Indeed, the Court notes with approbation that the NIH and related defendants appear to be - now that the law is clearly declared - moving quietly and expeditiously (this Court said "forthwith") to restore the specific terminated grants, see https://www.masslive.com/news/2025/06/20-nih-grants-restored-to-umass-system-after-judge-rules-against-trump-admin.html.

[5]

While the grant of a stay would throw the entire process into limbo during the course of the appeal, its denial means only that the executive defendants must comply with the Act of Congress rather than sequestering funds (probably forever) during the course of the appeal.

Far, far better were the defendants to seek expedited briefing and review so that a precedential decision may issue with ramifications beyond these parties and these grants.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[4]

---

This is how our government ought function without demeaning injunctive orders.

[4] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents. Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 47 years.

[6]