UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, *et al.*,<br><br>                                    Plaintiffs,<br><br>v.<br><br>ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services, *et al.*,<br><br>                                    Defendants. | Civil Action No. 25-CV-10814-WGY |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' REQUEST FOR**
<u>**PHASE 2 DISCOVERY**</u>[1]

Ignoring controlling law that bars the discovery they seek, Plaintiffs ask this Court to order what the Court acknowledged during the status conference on July 28, 2025, to be sweeping and overly broad extra-record discovery on an expedited basis. As this Court has done previously in this case, the Court should reject Plaintiffs' efforts to open discovery on a rushed basis, particularly in light of the impending pre-trial conference on September 2, 2025, and a Bench Trial shortly thereafter. As the Court also noted at the recent conference, no good reason exists for the States to engage in extensive discovery when a template already exists for stipulated facts that assures the parties are ready on the Court's schedule and which obviates any need for added discovery. Defendants have reached a stipulation with plaintiffs in the related case, *APHA, et al. v. NIH, et al.*, No. 25-cv-10787-WGY, to provide all required information to the plaintiffs on an accelerated

---

[1] Although Plaintiffs' motion is termed as a "Motion for Targeted Discovery and to Set a Phase Two case Schedule and Trial Date," the Court has already scheduled dates for a Pre-trial Conference/Motion to Dismiss Hearing and a Bench Trial during its July 28 status conference, and declined to impose the other dates requested by Plaintiffs. This issue is therefore moot. However, to the extent the Court considers any of the other deadlines suggested by Plaintiffs in their motion, Defendants oppose Plaintiffs' request for the reasons contained herein.

1

schedule, and this Court should order the same process be followed in this case. In the alternative, this Court should deny Plaintiffs premature request for discovery and order the Plaintiffs to follow the procedure that has been in place for Phase 2 of these proceedings since June 3, 2025.

## BACKGROUND

As the procedural history of this case shows, this Court has already rejected Plaintiffs attempts to prematurely seek discovery for their Phase 2 claims. Instead, the Court ordered that, should Plaintiffs believe that the Phase 2 Administrative Record ("AR") produced was incomplete, Plaintiffs would file a motion by July 23 to complete or supplement the AR, after which Defendants would have two weeks (until August 6) to oppose such a motion. Only after a finding by the Court that Defendants had not cured the deficiencies in the AR would the Court even consider whether very limited discovery was appropriate.

On May 29, 2025, the Parties submitted in a joint statement their respective positions concerning scheduling for Phase 2 proceedings, ECF No. 113. Plaintiffs stated that they intended to serve discovery on Defendants and requested that the Court order Defendants to respond to that discovery within 21 days. *Id.* at 2. Plaintiffs then served requests for production of documents, interrogatories, and deposition notices on Defendants on June 2, 2025. ECF No. 171 at Ex. A-C. Defendants, on the other hand, took the position that the Phase 2 proceedings follow the standard APA procedures, pursuant to which the Defendants would file a motion to dismiss, Plaintiffs could oppose, Defendants would lodge an AR, and then Plaintiffs file either a motion to complete or supplement the AR or a motion for summary judgment. *See* ECF No. 113 at 4.

At a June 3, 2025, status conference, Plaintiffs reiterated their request that the Court order Phase 2 discovery, arguing that Plaintiffs "believe that discovery is appropriate on most claims and that they're not properly limited to the administrative record." ECF No. 121 at 13. The Court

declined that request, however, and instead found that Defendants' proposal "makes good sense." ECF No. 121 at 12. At Plaintiffs' urging, the Court expedited the dates Defendants had proposed with respect to Defendants' motion to dismiss and lodging of the AR for Phase 2 but otherwise adopted the remainder of Defendants' proposal. ECF No. 119; ECF No. 121 at 12, 16-19. Specifically, the Court ordered that:

- Defendants may move to dismiss Plaintiffs' phase 2 claims by June 20;
- Defendants must file an AR by July 9.
- By July 23 (14 days after lodging the AR), Plaintiffs may file a motion to complete or supplement the record or may move for summary judgment.
- By August 6 (14 days after any motion filed by Plaintiffs), Defendants may file an opposition. No reply is permitted.
- If Plaintiffs move to complete or supplement the record, the parties must confer and submit a proposed schedule for further proceedings.

ECF No. 121 at 12-19 (adopting schedule). When asked by Defendants' counsel for clarification concerning discovery, the Court confirmed that Defendants need not respond to Plaintiffs' discovery requests "unless and until there's any motion to complete or supplement the record and ruling on that in Phase 2 from the Court," and, even then, only after a subsequent ruling by the Court that discovery is appropriate. *Id.* at 19. The parties and the Court reiterated their understanding of this schedule and process during the Phase 1 Final Pretrial Conference on June 12, 2025. After both parties confirmed their understanding of the court-imposed schedule, the Court noted that it "didn't intend, in any way, to alter it." *Id.* at p. 26.

Defendants timely filed their Motion to Dismiss the Phase 2 claims on June 20, as ordered by the Court. ECF No. 148. In their motion, Defendants sought expedited briefing on their motion to allow for this Court's guidance prior to needing to file a Phase 2 Administrative Record. *Id.* Plaintiffs, however, immediately opposed expedited briefing, asking the Court to adhere instead

3

to "the schedule adopted at the June 3 status conference." ECF No. 149. In response, the Court ruled that "The presently agreed deadlines are satisfactory. Request denied." APHA Docket, 25-cv-10787, ECF No. 136.

Consistent with the Court-imposed schedule, Defendants lodged their Phase 2 AR on July 9, 2025. ECF No. 165. Plaintiffs did not file a motion to complete or supplement the AR, or a motion for summary judgment, on July 23, 2025. Instead, they filed this motion again requesting discovery. ECF No. 171.

The Court held a Phase 2 Status Conference on July 28, 2025, at which the Court set a Final Pretrial Conference/Motion hearing on September 2, 2025, and a Bench Trial on September 15, 2025. ECF No. 164. The Court noted that it would take the legal arguments as to discovery under advisement and issue an order on or after August 15.[2] *Id.*

## ARGUMENT

This Court should not alter the process that the Court required the parties to follow, and upon which all parties have relied. Any request for discovery, and any additional schedule concerning that discovery, is premature and ignores that Court-imposed a schedule. As the Court noted during the July 28 status conference, Defendants have offered a reasonable approach—the same approach the parties have agreed to in the related *APHA* case—to provide Plaintiffs all the relevant facts they need to litigate their case in time for the September 2nd Pretrial Conference, and the September 15th Bench Trial. Plaintiffs, instead, insist on taking unnecessary and unduly burdensome discovery to which they are not entitled. This Court should order the parties to follow the same process underway in the related case so that the Court can decide the merits of Phase 2

---

[2] As both parties noted during the July 28 status conference, the Plaintiffs discovery motion was not fully briefed as Defendants had not yet submitted their opposition (consistent with the schedule already in place and the D. Mass. local rules).

without delay.

### 1. Plaintiffs Are Not Entitled to Extra-Record Discovery

#### a. Plaintiffs' request is premature under Supreme Court precedent

In *Department of Commerce v. New York*, the Supreme Court recognized that it was inappropriate, and an abuse of discretion, for a district court to order extra-record discovery without first finding that the existing administrative record is incomplete and providing the Government the opportunity to complete the administrative record. 588 U.S. 752, 782 (2019). In that case, the plaintiffs moved for an order to complete the record and for extra-record discovery. *Id.* The district court granted both requests during the same hearing, agreeing with the plaintiffs that the Government had submitted an incomplete administrative record and that "existing evidence" exhibited governmental pretext. *Id.* After the Government challenged the district court's order of extra-record discovery, the Supreme Court remarked that "[w]e agree with the Government that the District Court should not have ordered extra-record discovery when it did. At that time, the most that was warranted was the order to complete the administrative records." *Id.*[3]; *see also id.* at 793 (Thomas, J., concurring) ("Today all Members of the Court who reach the question agree that the District Court abused its discretion in ordering extra-record discovery based on this evidence."). Although the APA claims at issue in that case were brought pursuant to § 706(2), the Court did not distinguish in its opinion between procedures when plaintiffs have asserted § 706(1) or § 706(2) claims, as Plaintiffs ask the Court to do here.

Plaintiffs in this case seek to skip over the necessary first step that the Supreme Court and this Court have endorsed. Plaintiffs must first seek an order to complete the record, as provided in the existing schedule, before seeking any discovery. If (and only if) the Court finds that the record

---

[3] There, the parties stipulated that the extra-record discovery material should be part of the administrative record, and therefore the Court was able to consider those materials. *Id.* The parties have reached no such stipulation here.

is incomplete, Defendants must have the opportunity to complete the record *before* Plaintiffs can seek discovery. Plaintiffs cannot skip this step and pursue extra-record discovery in parallel.

The cases Plaintiffs cite do not state otherwise. Plaintiffs first cite *Nat'l Law Center on Homelessness & Poverty v. U.S. Dep't of Veterans Affairs*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012). ECF No. 171 at 4. The Court in *Nat'l Center*, however, was not resolving a dispute concerning an agency action or inaction under the APA (which was the basis of the underlying litigation). 842 F. Supp. 2d at 131. Instead, the *Nat'l Center* case involved the court's monitoring of compliance with its own 20-year-old permanent injunction stemming from an APA case. There, the Court's discussion of the need for discovery in § 706(1) claims were expressly premised on cases "where no administrative record was ever filed." *Id.* at 130-31. But here, an AR has been filed, and the appropriate step is for Plaintiffs to first move to complete that AR should they believe it is in insufficient.

In *Cherokee Nation v. United States Dept' of Interior*, also cited by Plaintiffs, although that court found extra-record review warranted, the district court was careful to note that its decision was specific to the issues presented involving the treatment of a Native American tribe, primarily because the court determined that judicial review of the issues in that case were difficult, if not impossible, absent extra-record evidence. 531 F. Supp. 3d 87, 96 n.2 (D.D.C. 2021) (noting disagreement in Non-Native American case about the applicability of a "failure to act exception" to the general rule that judicial review is ordinarily limited to the AR in existence at the time). And in *Roe v. Mayorkas*, the Court *denied* the plaintiffs' request for extra-record discovery, finding it sufficient to order the defendants to confirm that "the administrative record includes all documents and materials, directly or indirectly, considered by the agency" relevant to the applications at issue, and nothing more. No. 22-cv-10808-ADB, 2024 WL 5198705, at *12 (D. Mass. Oct. 2, 2024).

"The better reading of the APA is that its record review requirement 'applies [regardless of] whether a court is reviewing agency action or inaction.'" *Dallas Safari Club v. Bernhardt,* 518 F. Supp. 3d 535, 539-40 (D.D.C. Feb. 9, 2021) (quoting *Biodiversity Legal Foundation v. Norton*, 180 F. Supp. 2d 7, 10 (D.D.C. 2001)). Notably, "nothing in the statutory text [of 5 U.S.C. § 706] distinguishes the scope of record review based on whether the claim is directed at agency action or inaction. And nowhere does the text even hint at extra-record review occurring as a matter of course when agency action is alleged to be 'unlawfully withheld or unreasonably delayed.'" *Id.* at 539.

### b. Plaintiffs' assertion of constitutional claims do not warrant discovery

Recognizing the weaknesses in their request for discovery on their APA claims, Plaintiffs next contend that they are entitled to discovery on their constitutional and *ultra vires* claims. This argument, too, is unavailing. Due to the States' then-pending motion for preliminary relief, Defendants had no opportunity to file a motion to dismiss in Phase 1 of this case, but the Court construed the Defendant's Opposition to the *APHA* plaintiffs motion for a preliminary injunction as a motion to dismiss and dismissed all non-APA claims—virtually identical to the non-APA claims asserted in this case—recognizing that "[t]his is the stuff of APA litigation, which appears to provide an avenue for complete relief in this matter." *APHA, et al. v. NIH et al.*, 2025 WL 1548611, at *15 ECF No. 84 at 43 (citing *Jafarzadeh v. Nielsen*, 321 F. Supp. 3d 19, 40 (D.D.C. 2018)). It is highly likely that Plaintiffs' constitutional claims in this case suffer the same fate.[4]

Nor does the mere assertion of constitutional claims in this APA litigation warrant discovery. "[T]o allow broad ranging discovery under Rule 26, beyond the administrative record in every case where a plaintiff alleges a constitutional claim, would be inappropriate and render

---

[4] In Defendants' motion to dismiss Phase 2 proceedings, Defendants have moved to dismiss Plaintiffs' non-APA claims for the reasons outlined in the Court's decision in *APHA*, amongst other reasons. ECF No. 150 at 17-19.

7

meaningless the APA's restriction of judicial review to the administrative record." *Almaklani v. Trump*, 444 F. Supp. 3d 425, 434 (E.D.N.Y. 2020). "Indeed, several district courts have determined that constitutional claims are governed by the APA and, therefore, constitutional claims should be decided on the administrative record without further discovery." *Ahmed v. Mayorkas*, No. CV 23-4807 PA (ASx), 2024 WL 5317160, at *2 (C.D. Cal. May 1, 2024). As such, the mere assertion of a constitutional claim, along with an APA claim, is insufficient to justify discovery beyond the administrative record. *See Harvard Pilgrim Health Care v. Thompson*, 318 F. Supp. 2d 1, 10 (D.R.I. 2004); *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 58 F. Supp. 3d 1191, 1238 (D.N.M. 2014).

Beyond the mere recognition that they have raised constitutional claims, Plaintiffs provide only a single conclusory sentence to argue the necessity of additional discovery. Doc. No. 171 at 6-7. Such a barebones assertion cannot suffice to defeat the well-worn principle that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam). This principle is particularly apt where, as here, the Plaintiffs' "constitutional claims . . . are fundamentally similar to their APA claims . . .". *Chang v. U.S. Citizenship & Immigr. Servs.*, 254 F. Supp. 3d 160, 161 (D.D.C. 2017). This Court already dismissed the similar constitutional claims raised by APHA Plaintiffs, recognizing that "plaintiffs' concerns are better addressed by other counts of their complaint, that is, their APA claims." *APHA v. NIH*, 2025 WL 1548611 at *15. If such overlap warrants dismissal of the constitutional claims entirely, it certainly cannot also warrant extra-record discovery.

Given such considerations, it would be imprudent for this Court to allow discovery prior to adjudicating the Defendants' pending motion to dismiss Phase 2 proceedings, particularly where

Defendants have raised issues in their motion concerning this Court's jurisdiction over Phase 2 of this case. *See, e.g.*, *Republic Maximal LLC v. Romulus Capital Partners II, LLC*, No. 22-cv-10429-MLW, 2024 WL 199772, at *2 (D. Mass. Jan. 18, 2024) ("It is not appropriate to allow discovery until it is decided whether the court has jurisdiction"); *Halawi Inv. Trust, SAL v. Boston Merchant Financial, Ltd.*, No. 13-cv-11631-NMG , 2014 WL 2515697, at *3 (D. Mass. June 2, 2024) (staying discovery until court decided whether it has jurisdiction).

### c. The end of the Congressional fiscal year does not provide a basis for Plaintiffs' request for discovery

Plaintiffs also imply that they should be allowed to bypass the normal APA process and move directly to discovery because of the approaching end of the Congressional fiscal year on September 30. This argument is a red herring. As previously noted, Plaintiffs were unconcerned about the end of the fiscal year when Defendants previously requested that the Court expedite the schedule. *See* ECF No. 149. Plaintiffs' demand for discovery now, rather than allowing Defendants to resolve any claimed deficiencies in the AR, would *slow* this case down, not expedite it. The Court made clear during its July 28 hearing that it was striving to issue a ruling on the merits of the Phase 2 claims in advance of the Congressional fiscal year end on September 30, in part to avoid any doubt about the availability of funding. Plaintiffs' demands for discovery at this juncture runs squarely against those efforts. Should Plaintiffs truly care about expediency, as they claim, they should instead agree to the stipulation reached between Defendants and the *APHA* plaintiffs (discussed in further detail below).

Finally, Plaintiffs argument ignores that, should they succeed on their Phase 2 claims, any relief that this Court may provide would be limited to an order requiring Defendants to *decide* Plaintiffs' grant applications; the Court cannot order Defendants to *fund* any specific grant applications submitted by Plaintiffs. Should NIH decide to award an application at issue in Phase

9

2 of this case, the end of the current fiscal year does not preclude NIH from funding that grant at the time the award is made. Thus, their claimed "appropriated funds" argument is inapt for these Phase 2 proceedings.

This Court should require Plaintiffs to follow the procedure imposed by the Supreme Court and previously endorsed by this Court.

2. **The Court Has Already Ruled that Plaintiffs Are Not Entitled to Extra-Record Discovery Until After They File a Motion to Complete or Supplement the AR, the Court's Adjudication of that Motion, and After Defendants Have Had An Opportunity to Complete**

As detailed in the "Background" section above, Plaintiffs previously pressed the Court to order Phase 2 discovery during the June 3 status conference. *See* ECF No. 121 at 13. After conferring with all three parties in the two related cases, the Court did not allow extra-record discovery but instead imposed a schedule pursuant to which Plaintiffs could file *a motion to complete or supplement the record* if they believe the AR produced by Defendants is incomplete. ECF No. 121 at 12-19. The Court-imposed schedule further provides Defendants two weeks to respond to any motion to complete, and only then, if the AR remains incomplete, contemplates the Court's consideration of whether discovery is appropriate. *Id*.

Defendants clarified the Court's order during that June 3 hearing, expressly asking the Court to confirm that "defendants need not respond to these [discovery requests] until -- unless and until there's any motion to complete or supplement the record and a ruling on that in Phase 2 from the Court." *Id.* at 19. The Court noted that it "think[s] that makes sense," and that Defendants would only need to respond if (and only if) "the Court orders that discovery is appropriate" following the conclusion of this process. ECF No. 121 at 19; *id.* ("*If* we get there") (emphasis added).

Despite acknowledging that schedule on several occasions, ECF No. 137 at 25; ECF No.

10

149, Plaintiffs now ignore the Court's order and instead filed the instant a motion for discovery.

### 3. Defendants Have Offered to Provide Plaintiffs All Relevant Information Without the Need for Onerous Discovery

As discussed with the Court during the July 28, 2025 status conference, Defendants have offered a practical, reasonable, and expedient approach to provide Plaintiffs all the relevant information they need to prosecute their claims without onerous and burdensome discovery. As of this filing, Plaintiffs have so far refused this practical approach out of hand. This Court should order that the parties follow this approach as it obviates the need for any extra-record discovery or further completion of the AR.

The Court and parties have been moving this case along at a rapid pace, and Defendants recognize Plaintiffs desire for a quick resolution to their remaining claims. Defendants are also mindful of the Court's concern about a prompt decision. Accordingly, Defendants offered to provide Plaintiffs the same stipulation that Plaintiffs reached with the plaintiffs in the related *APHA* case. *See APHA v. NIH*, No. 25-cv-10787, ECF No. 163. Specifically, the Defendants agreed to produce to the APHA plaintiffs (and the Court) a certification from an NIH official attesting to a host of relevant information about each grant application and Notice of Funding Opportunity that the *APHA* plaintiffs have identified to Defendants. In exchange, the *APHA* plaintiffs have agreed to forego a motion to complete the AR or for discovery, with a very limited reservation. This approach provides the *APHA* plaintiffs all the information they need to make their claims and all the Court needs to decide the merits of the plaintiffs' remaining APA claims, without the need for compilation of a lengthy AR and time-consuming and needless discovery.

Plaintiffs here have expressed that they, too, will be providing Defendants a spreadsheet listing grant applications which they believe were unreasonably delayed or unlawfully withheld. *See* ECF No. 171 at 9. Plaintiffs, however, have refused the practical approach agreed upon by the

parties in the related case, instead pressing their claimed entitlement to discovery, which presumably includes information about applications they have not even yet identified to the Government. As Plaintiffs refuse to voluntarily proceed in a practical manner, this Court should deny their request for discovery and instead order the parties in this case to follow the same process that the parties are following in the related case. Plaintiffs here are not entitled to any more information than what Defendants have offered to provide in their stipulation with the *APHA* plaintiffs.

Even if the Court does not order the parties in this case to take the same approach as is being taken in *APHA*, this Court should deny Plaintiffs unnecessary and overly burdensome discovery requests, particularly where the parties are already working tirelessly to meet the fast-approaching deadlines already set by the Court.

### 4. The Discovery Requests Are Overly Broad, Unduly Burdensome, and Designed to Oppress

Plaintiffs erroneously contend that their discovery requests are "modest and tailored to their unreasonable-delayed claims." ECF No. 171 at 8. Not so. Rather, Plaintiffs have propounded sweeping requests for production of documents, interrogatories, and deposition notices that go well beyond the information to which they are entitled and, in many instances, untethered to the claims asserted in this litigation or their own institutions' applications. Plaintiffs also claim to "reserve the right to seek limited supplemental discovery if necessary for completeness." ECF No. 171 at 8 n.5.

In addition to the reasons outlined above, this Court should deny Plaintiffs' discovery requests as they are overly broad, unduly burdensome, seek privileged information, and are designed to oppress and impose unnecessary expense on Defendants. For example, Plaintiffs "First Set of Interrogatories" demand that Defendants to answer the following interrogatory, completely

untethered to the Plaintiffs' own grant applications:

> **Interrogatory No. 3:**
>
> Separately for each Fiscal Year from 2016 through 2025, and for each of Cycle I, Cycle II, and Cycle III in each year, state the date by which NIH (1) completed all Study Section meetings; (2) completed all Advisory Council meetings; and (3) reached a final disposition on all grants applications reviewed in that cycle. If such dates are not yet known for any part of Fiscal Year 2025, state when NIH reasonably anticipates those events will occur.

ECF No. 171-2 at 2. Answering this interrogatory would require NIH to obtain information about thousands upon thousands of grant applications submitted to numerous Institutes and Centers ("IC") across NIH and gather information from each IC about the thousands of Study Section and Advisory Council meetings that they have held during each NIH review cycle over a nearly 10-year period. Such an effort is wholly inappropriate in this litigation and beyond the scope of any information to which Plaintiffs that is relevant to their asserted claims.

Defendants would need to further canvas each IC to respond to the following interrogatory:

> **Interrogatory No. 7:**
>
> Describe with specificity all actions NIH has taken, is taking, or plans to take to ensure that the annual extramural grant review and award process, including Study Section meetings, Advisory Council meetings, and issuance of Notices of Award, is completed by the end of the fiscal year. In your answer, identify any internal targets, deadlines, capacity increases, or resource reallocations made to support the completion of extramural grant review and award by the end of the fiscal year.

*Id.*[5] For the same reasons, "identify[ing] any internal targets, deadlines, capacity increases, or resource allocations" within each IC, and then from the reviewers conducting each of the numerous Study Sections and Advisory Council meetings, would be a herculean effort that would provide little to no probative information concerning whether Plaintiffs' grant applications were unreasonably delayed or unlawfully withdrawn from consideration.

---

[5] Many of Plaintiffs' proposed Interrogatories appear designed to obtain information related to (albeit well beyond what is relevant to) Plaintiffs' Spending Clause, separation-of-powers, and *ultra vires* claims. However, as this Court noted in the related case, these constitutional claims should be dismissed from this matter where the APA "appears to provide an avenue for complete relief in this matter." *APHA*, 2025 WL 154811, at *15.

13

Plaintiffs' deposition notices are equally oppressive. Amid an expedited trial schedule, Plaintiffs seek a Rule 30(b)(6) deposition, requesting that an NIH deponent be prepared to discuss numerous topics for examination that go well beyond what the federal or local rules allow, including information about every Study Section and Advisory Council meeting held by the various ICs for the past 8 years. For example, Topic of Examination No. 2 requires that a Rule 30(b)(6) deponent be available to discuss;

> 2. Instructions or policies in effect or communicated to NIH personnel between October 1, 2017, and January 19, 2025, regarding:
>
>    a. whether and when to publish notices in the Federal Register regarding Study Section meetings and/or Advisory Council meetings; and
>
>    b. whether and when to conduct Study Section meetings and/or Advisory Council meetings.

ECF No. 171-3 at 5. Preparation of a single Rule 30(b)(6) witness to answer the questions posed in Plaintiffs' deposition notice would require days, if not weeks, of time that is being currently being spent gathering information for completion of an AR and implementing the Phase 1 Judgment.

Plaintiffs' deposition requests do not end there. Plaintiffs also seek to depose at least two high-ranking NIH officials, including NIH's Principal Deputy Director, its Acting Deputy Director of Extramural Research. However, both the Supreme Court and the First Circuit have discouraged such a practice. *See Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007); *United States v. Morgan*, 313 U.S. 409, 422 (1941). In *Bogan*, the First Circuit advised that:

> The need for limited access to high government officials through the discovery process is well established. In *United States v. Morgan*, 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941), the Supreme Court indicated that the practice of calling high ranking government officials as witnesses should be discouraged. Relying on *Morgan*, other courts have concluded that top executive department officials should not, absent extraordinary circumstances, be called to testify or deposed regarding their reasons for

14

> taking official action. *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C.Cir.1985); *see also In re United States (Holder)*, 197 F.3d 310, 313 (8th Cir.1999); *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir.1995); *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir.1993). This rule is based on the notion that "[h]igh ranking government officials have greater duties and time constraints than other witnesses" and that, without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation. *Kessler*, 985 F.2d at 512.

*Brogan*, 489 F.3d at 423.[6] Although the First Circuit noted that "this limitation is not absolute," depositions of high-ranking officials are only appropriate "where it is shown that other persons cannot provide the necessary information." *Id.* Plaintiffs have not made, and cannot make, such a showing – particularly when Defendants have offered to provide Plaintiffs all the information needed to prosecute their claims through a stipulation.

Accordingly, for this additional reason, the Court should reject Plaintiffs' request to indulge in this unwieldly discovery, which would undoubtedly risk the Court's goal of a full merits hearing by September 15 and unfairly hamper the Government's ability to defend itself during this litigation.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiffs' motion for further discovery and to set a (further) phase two schedule.

---

[6] The phrase "high ranking government official" applies to a variety of roles. *See Huffman v. City of Boston*, No. 21-10986-ADB, 2023 WL 8792559 at *2 (D. Mass. Dec. 19, 2023) (Mayor of Boston and Police Commissioner); *In re F.D.I.C.*, 58 F.3d 1055, 1060 (5th Cir. 1995) (FDIC Commissioners); *McNamee v. Massachusetts*, No. 12–40050–TSH2013 WL 1285483, at *3 (D. Mass. Mar. 25, 2013) (chief of staff to congressman); *United States v. Newman*, 531 F.Supp.3d 181, 188-89 (D.D.C. Mar. 17, 2021) (collecting cases identifying as "high-ranking government officials" the president, cabinet-level officials, U.S. Senators, the General Counsel of the U.S. House of Representatives, "certain high administrative heads" and the Deputy Chief of Staff of EPA); *Federal Deposit Insurance Corporation v. Galan–Alvarez*, 2015 WL 5602342 at *4-5 (D.D.C. Sep. 4, 2015) (FDIC chairperson and senior deputy director).

15

| | |
|---|---|
| Dated: July 30, 2025 | Respectfully submitted,<br><br>BRETT SHUMATE<br>Assistant Attorney General<br><br>LEAH B. FOLEY<br>United States Attorney<br><br>KIRK T. MANHARDT<br>Director<br><br>MICHAEL QUINN<br>Senior Litigation Counsel<br><br>*/s/ Anuj K. Khetarpal*<br>ANUJ K. Khetarpal<br>Assistant U.S. Attorney<br>United States Attorney's Office<br>1 Courthouse Way, Suite 9200<br>Boston, MA 02210<br>Tel: (617) 748-3658<br>Email: anuj.khetarpal@usdoj.gov<br><br>Samuel Hobbs (AL Bar No. 9776O19E)<br>Trial Attorney<br>U.S. Department of Justice<br>Civil Division<br>Corporate/Financial Section<br>P.O. Box 875<br>Ben Franklin Stations<br>Washington D.C. 20044-0875<br>Tel: (202) 616-8077<br>Email: samuel.hobbs@usdoj.gov<br><br>*Attorneys for Defendants* |

## **CERTIFICATE OF SERVICE**

       I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: July 30, 2025                      */s/ Anuj K. Khetarpal*
                                                       Anuj K. Khetarpal
                                                       Assistant U.S. Attorney